AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

United States of America
v.

Jose Luis TORRES

*Defendant(s)*

Case No. 2:25-mj-145

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __07/30/2024__ in the county of __Franklin__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 | Conspiracy to possess with the intent to distribute at least 5 kilograms or more of cocaine |

This criminal complaint is based on these facts:
See attached Affidavit, which is fully incorporated herein.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

DEA Special Agent Daniel Rutherford
*Printed name and title*

Sworn to before me and signed in my presence.
VIA FACETIME VIDEO
Date: March 14, 2025

_____
*Judge's signature*

City and state: Columbus, Ohio

Honorable ELIZABETH A. PRESTON-DEAVERS, U.S. Magistrate
*Printed name and title*

## AFFIDAVIT

I, Daniel Rutherford, being duly sworn, depose and state the following:

## INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since November of 2023. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I am empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of 21 U.S.C. § 878. I hold a bachelor's degree in Aeronautics from Embry-Riddle Aeronautical University. I have undergone the following training:

    a. I have completed the DEA Basic Agent Training Academy, which is a 17-week course in Quantico, Virginia that included training in surveillance, undercover operations, confidential source management, search warrant operations and other law enforcement subjects. I continue to receive training on a daily basis by conducting criminal drug investigations and drawing from the expertise of agents more experienced than myself.

    b. Additionally, as a DEA Special Agent, my experience includes participating in criminal arrests, conducting physical surveillance, trash seizures, executing court-authorized search warrants, and interviewing cooperating sources and witnesses.

## PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of an application for a federal arrest warrant and complaint against:

    a. Kevin Justin **REED** ("**REED**"),

    b. Jose Luis **TORRES** ("**TORRES**"), and

    c. Jaime **CHAIDEZ-CAMBERO** ("**CHAIDEZ-CAMBERO**")

1

for a violation of Title 21, United States Code, Section 846, conspiracy to possess with the intent to distribute cocaine, and a violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) and 18 United States Code, Section 2, possession with intent to distribute at least 5 kilograms or more of cocaine.

3. My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigations conducted by other law enforcement officers and investigators concerning the facts and circumstances involved in the subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe that each of the above defendants committed the violations.

## SUMMARY OF PROBABLE CAUSE

4. In June of 2024, members of the DEA Columbus District Office began an investigation into the Sir Jeffrey CARROLL ("CARROLL") Drug Trafficking Organization ("DTO") operating in the Southern District of Ohio. Investigators received information from a Confidential Source ("CS1") in reference to the CARROLL DTO. CS1 stated that CARROLL is a multi-kilogram level distributor operating in the Columbus and Chillicothe, Ohio areas, within the Southern District of Ohio. In July of 2024, investigators were able to infiltrate this DTO by inserting another Confidential Source ("CS2") into the CARROLL DTO. CS1 and CS2 have each provided information that has been independently corroborated and led to arrests and the seizure of narcotics. As such, CS1[1] and CS2[2] are believed to be reliable and credible.

4. On or about July 30, 2024, CS1 received information from known parties

---

[1] CS1 is providing information for compensation
[2] CS2 is providing information for judicial consideration

2

involved in the transaction that CARROLL would be picking up approximately 10 kilograms of cocaine that day from a semi-truck driver who would be at a Marathon Gas Station located at 5991 South High Street, Lockbourne, Ohio. As a result of this information, DEA maintained surveillance at CARROLL's residence located at 147 North Hickory Street, Chillicothe, Ohio. On the same date, CS1 received information from known parties involved in the transaction that the plans had changed and a courier would be traveling to CARROLL's girlfriend's residence to deliver the narcotics, located at 5518 Sweet Gale Court, Canal Winchester, Ohio, to complete the transaction. Investigators were already familiar with 5518 Sweet Gale Court, Canal Winchester, Ohio, due to a prior controlled purchase of fentanyl between CS2 and CARROLL where on the same date CARROLL was surveilled back to Winchester Meadows Drive which is in the same neighborhood of 5518 Sweet Gale Court. Following the first controlled purchase, investigators then confirmed the address of 5518 Sweet Gale Court after investigators observed CARROLL on surveillance on multiple occasions entering and exiting the residence and have often seen his girlfriend entering and exiting the residence. CS1 timely notified investigators of this information.

5. While conducting surveillance that day, investigators observed CARROLL drive from 147 North Hickory Street, Chillicothe, Ohio, directly to 5518 Sweet Gale Court, Canal Winchester, Ohio. Upon arrival at 5518 Sweet Gale Court, CARROLL parked his vehicle in the driveway and investigators observed the garage door already opened and two unknown Hispanic males and one unknown black male exit the residence of 5518 Sweet Gale Court, go into the attached garage and interact shortly with CARROLL in the garage. All four individuals then entered the residence through the

3

interior garage door. Shortly after, all four individuals exited the residence through the interior garage door into the garage. CARROLL moved his vehicle allowing a grey Ford F-150 which was parked inside the garage of the residence to exit. The two Hispanic males and black male entered the grey Ford F-150 bearing Tennessee license plate BQQ 6112. Investigators then observed the Ford F-150 depart from the garage of the residence and surveillance was then established on the Ford F-150 containing the two Hispanic males and one black male.

6. Continuing on the same date, Ohio State Highway Patrol (OSHP) Trooper Mike Wilson initiated a stop on the Ford F-150 for a traffic violation in Columbus, Ohio. Based on physical surveillance, the Ford F-150 did not make any stops or meet with anyone between 5518 Sweet Gale Court and the traffic stop. Upon making the stop, Trooper Wilson identified the driver as Jaime CHAIDEZ-CAMBERO, the front passenger as Jose Luis TORRES and the backseat passenger as Kevin Justin REED. During the traffic stop, Trooper Wilson deployed a certified drug K-9 to conduct a free air sniff of the vehicle which resulted in a positive alert for the presence of drugs. During a probable cause search of the vehicle, Trooper Wilson located and seized a backpack containing approximately five kilograms of suspected cocaine, which was located under the backseat where REED was sitting. Investigators conducted a field test on the suspected cocaine, which yielded a positive test for the presence of cocaine, a Schedule II controlled substance. All three occupants were detained and transported to the OSHP Alum Creek Post, where CHAIDEZ-CAMBERO, TORRES, and REED, were fingerprinted and interviewed. CHAIDEZ-CAMBERO and TORRES requested a lawyer, and REED was read and provided a copy of the Miranda rights. REED acknowledged his

4

rights and waived them by signing a DEA-13 form.

7. During the interview with REED, investigators questioned him as to why they traveled from Grand Rapids, Michigan, to Columbus, Ohio. REED stated that they were driving from Michigan to Ohio, to eat at a Mexican restaurant in downtown Columbus. When investigators questioned REED as to the name of the restaurant, he could not recall. REED would also periodically lash out to investigators and say that he knows nothing about "dope", because he only sells and uses marijuana. REED did advise investigators that they stopped at a Marathon gas station in Columbus, Ohio but he did not know the location. REED remembered parking in front of the Marathon gas station exiting the vehicle to use the restroom then returning to the F-150 that was parked in the same position. REED stated he never observed anyone meet with anyone while at the gas station. The interview concluded and CAMBERO, TORRES, and REED were released.

8. On or about August 2, 2024, investigators retrieved surveillance footage from the Marathon gas station located at 5991 South High Street, Lockbourne, Ohio, where CS1 stated the original narcotic transaction would occur. Investigators reviewed the surveillance footage in its entirety and observed:

   a. at approximately 2:31 p.m., TORRES driving a Ford F-150 bearing Tennessee license plate BQQ 6112 and arriving at the Marathon gas station and park near the front entrance;

   b. at approximately 2:33 p.m., TORRES and REED exit the Ford F-150 and enter into the Marathon gas station through the front entrance;



c. at the same time, investigators noticed a BIA Group semi-truck travelling northbound on US 23 before making a westbound turn onto the access road to enter the Marathon gas station parking lot and proceed to park in the truck parking lot area;



d. a few minutes later, TORRES and REED return to the Ford F-150 where TORRES entered the driver's seat and REED entered into the back-passenger seat;

e. at approximately 2:42 p.m., TORRES back the Ford F-150 out of the parking space and repark on the north side of the Marathon gas station lot;

6

    f. at approximately 2:44 p.m., CHAIDEZ-CAMBERO exit the front passenger seat of the Ford F-150 and walk through the north side of the parking lot to approach the previously described BIA Group semi-truck that was parked on the northwest side of the Marathon lot;

    g. CHAIDEZ-CAMBERO approach the passenger side of the semi-truck and appear to open the passenger side door to engage the semi-truck driver in conversation;

    h. shortly after, CHAIDEZ-CAMBERO return to the Ford F-150 and enter back into the front passenger seat;

    i. at approximately 2:54 p.m., the Ford F-150 back out of the parking spot, drive to the northwest side of the parking lot, and park directly in front of the same BIA Group semi-truck;

    j. CHAIDEZ-CAMBERO exit the front passenger seat of the Ford F-150 and enter into the front passenger seat of the semi-truck;

    k. at approximately 3:00 p.m., CHAIDEZ-CAMBERO exited the front passenger seat of the semi-truck and appeared to go back and forth between the Ford F-150 and the semi-truck multiple times. Due to investigators training and experience this type of activity is consistent with carrying something back and forth;

    l. at approximately 3:22 p.m., CHAIDEZ-CAMBERO enter back into the front passenger seat of the Ford F-150 which then departed the lot;

    m. at approximately 3:35 p.m., the semi-truck depart the lot.

9.     The semi-truck's trailer belongs to BIA Group located near Chicago, Illinois. Based on the activity in the parking lot, the address of the Marathon gas station matching the earlier information, the timing of events at the gas station and events at the 5518 Sweet Gale Court, and the recovery of the cocaine, investigators believe that the semi-truck driver supplied TORRES, REED, and CHAIDEZ-CAMBERO with multiple kilograms of cocaine on July 30, 2024.

10.     The suspected cocaine that was seized on July 30, 2024, was submitted to

the DEA North Central Laboratory in Chicago and confirmed to be approximately 5014.1 grams of cocaine, a Schedule II controlled substance.

## CONCLUSION

11. Based upon this information, your affiant believes probable cause exists that on or about July 30, 2024, in the Southern District of Ohio and elsewhere, Kevin Justin REED, Jose Luis TORRES, and Jaime CHAIDEZ-CAMBERO, did knowingly and intentionally combine, conspire, confederate, and agree with each other and with others whose identities are known, to distribute and possess with the intent to distribute at least 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, its salts, optical violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A).

Daniel Rutherford
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 14th day of March 2025.

HONORABLE ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE